THE STATE OF OHIO, APPELLEE, *v.* BOCK, APPELLANT.

(No. CA83-08-011—Decided April 30, 1984.)

*Mr. Ronald Carey,* prosecuting attorney, for appellee.

*Ruppert, Bronson & Chicarelli Co., L.P.A., Mr. David A. Chicarelli* and *Mr. Douglas M. Cohen,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clinton County.

On February 6, 1983, John Nicely observed an unidentified individual entering the garage at 136 High Street, Wilmington, Clinton County, Ohio. Nicely was standing in the driveway of his home at 133 High Street, located across the street from the house numbered 136. Anthony Stephens, who owned the residence at 136 High Street, had asked Nicely to keep an eye on the house in his (Stephens') absence so Nicely immediately crossed the street to investigate.

The garage at 136 High Street is a squat, one-story structure with a flat roof, situated next to a two-story residence also located on the property. Two rectangular wooden doors, hinged at the sides of the garage, open to admit a single automobile. When Nicely arrived at the garage, he jerked one of the doors open and, upon seeing an individual within the structure, asked the individual what he was doing there. The individual, whom Nicely recognized as appellant, Donald Bock, a former tenant at 136 High Street, responded that he was "putting this fire out" and proceeded to rub an area on one of the sides of the garage that was on fire. Nicely testified that Bock "jumped" when the former entered the garage, and that Bock did not appear to be extinguishing the fire until he became aware of Nicely's presence. After satisfying himself that the fire was out, Nicely returned to his own home and telephoned the Wilmington Police Department.

A subsequent investigation of the

premises at 136 High Street by Wilmington police and fire authorities revealed evidence of four unconnected "set" fires. In addition to the fire in the garage extinguished by Bock in Nicely's presence, evidence of fire was found in another part of the garage, in a closet inside the residence, and in the basement of the residence. Laboratory analysis revealed that traces of an accelerant, determined to be gasoline, were present at one of the burned areas in the garage (the one where the fire was being "put out" by the defendant) and at the burned area in the closet. A polyethylene squeeze bottle was found in the garage partially filed with a liquid later determined to be gasoline. Traces of gasoline were also discovered on a shop rag found near the fire in the basement and a military-type glove found near the closet.

Bock was arrested and charged with aggravated arson in violation of R.C. 2909.02. Anthony Stephens, owner of the property at 136 High Street, was contacted by Wilmington Police and taken to view the premises the evening of February 6, 1983. Stephens then voluntarily gave a written statement to the police indicating that Bock, whom Stephens had known for approximately ten years, had begun renting the house at 136 High Street on or about October 1982. Bock subsequently fell behind in his rent and utility payments and was asked to leave; Stephens proceeded to move back into the house. According to the statement, neither Stephens nor Bock could pay the various amounts owed on the house (all of the utilities were kept in Stephens' name throughout Bock's tenancy, and Stephens was evidently using Bock's rent payments to make mortgage payments on the house) so Bock and Stephens agreed to set the house on fire and use the insurance money to pay the debts. Bock was to set the fire in return for an automatic washer and dryer, which was given to

Bock by Stephens prior to the arson attempt, and $1,000, to be paid when the insurance money was collected. Stephens was subsequently arrested on a charge of aggravated arson, and pleaded guilty to a reduced charge of arson prior to Bock's trial.

After making the above-described statement to police on February 6, 1983, Stephens had occasion to talk with defendant's wife, Rhonda Bock, and was led to believe that he or his family would be harmed in some way because he had implicated Bock in the arson. Stephens then made another statement, typed by Rhonda Bock, which did not mention the agreement to burn the house to collect insurance money, and strongly implied that Bock had nothing whatever to do with setting the fires found in his house. The first statement was, according to the second statement, given while Stephens was "heavily under the influence of alcohol, and very unstable in * * * mind." At trial, Stephens testified that the second statement was not true, and that it was composed only because he was afraid of retribution by Bock based on the first statement.

A trial by jury was held in the Court of Common Pleas of Clinton County on July 25 and 26, 1983. The jury returned a verdict finding Bock guilty of aggravated arson. Notice of appeal to this court having been timely filed, appellant presents the following three assignments of error:

First Assignment of Error:

"The trial court erred to the prejudice of defendant-appellant by admitting into evidence oral testimony and written documentation of a prior consistent statement of a witness."

Second Assignment of Error:

"The trial court erred to the prejudice of the defendant-appellant by refusing to grant the motion for acquittal on the issue of aggravated arson and attempted aggravated arson and by giving an instruction on the same."

Third Assignment of Error:

"The court erred to the prejudice of the defendant-appellant by giving an incorrect instruction to the jury on the lesser-included offense of arson."

In his first assignment of error, appellant asserts that the trial court erred by admitting into evidence a prior consistent statement of state's witness Anthony Stephens. A prior consistent statement is admissible at trial if the statement is offered to rebut an express or implied charge on cross-examination that the witness was fabricating testimony given on direct examination, or a charge that such testimony was the result of recent fabrication or improper influence or motive. Evid. R. 801(D)(1)(b).

The admission of evidence complained of arose as follows: Stephens, testifying on direct examination on behalf of the state, stated that he and Bock agreed to burn Stephens' house and collect the insurance money. The prosecutor then attempted to introduce Stephens' statement to this effect, but defense counsel's objection was sustained. Stephens also testified on direct examination that he had written a second statement implying that Bock had nothing to do with setting the fires because he was scared of Bock, and that the second statement was not a true account of the circumstances surrounding the alleged arson. The truth, according to Stephens, was that he and Bock were both involved. On cross-examination, Stephens was asked to read the second statement, and he was thoroughly questioned as to the truth or falsity of its contents. On re-direct, Stephens again stated that the first statement was true and that the second statement was not true. The court subsequently admitted both statements into evidence.

While the events described above hardly constitute textbook usage of a prior consistent statement, it is our view that Stephens' prior consistent statement was properly admitted below. On cross-examination, defense counsel clearly attempted to imply, through use of a prior inconsistent statement, that Stephens was fabricating his testimony. Evid. R. 801(D)(1)(b) allows the use of a prior consistent statement for the purpose of rehabilitating a witness' testimony under such circumstances. In the case *sub judice,* the fact that Stephens had made two conflicting statements prior to trial was thoroughly explored on direct examination, long before the inconsistent statement was introduced on cross-examination to impeach the witness' credibility and imply that his testimony on direct examination was fabricated. However, the prosecutor was still entitled to present the prior consistent statement to show that Stephens was telling the same story he told at trial prior to the inconsistent statement explored on cross-examination. It was unnecessary to have Stephens testify as to the contents of the prior consistent statement, which would be the usual sequence of events under Evid. R. 801(D)(1)(b), because the statement was in complete accord with Stephens' testimony on direct examination. However, this happenstance does not diminish the prosecutor's right to rehabilitate the witness.

Therefore, appellant's first assignment of error is not well-taken.

The fundament of appellant's second assignment of error concerns whether or not the house at 136 High Street was an "occupied structure" for purposes of R.C. Chapter 2909. The determination is of importance because one can only commit aggravated arson per R.C. 2909.02(A)(2) or (3) if the building involved is an occupied structure. If it is not an occupied structure, the perpetrator may only be found guilty of "arson" per R.C. 2909.03, which speaks of creating by fire or explosion a substantial risk of harm "* * * to any property * * *." The assignment of error asserts that the subject residence

was not an occupied structure because it was in fact abandoned by Stephens for the purpose of allowing appellant to burn it down. Therefore, it is appellant's position that the court below erred in not granting his motion to acquit on the charges of aggravated arson and attempted aggravated arson.

The definition of "occupied structure" applicable to the facts of the case at bar is expressed in R.C. 2909.01 as follows:

"As used in sections 2909.01 to 2909.07 of the Revised Code, an 'occupied structure' is any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

"(A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;"

The Committee Comment relevant to the language quoted above is as follows:

"Under division (A) of the section, all dwellings are classed as occupied structures, regardless of the actual presence of any person. Whether or not the dwelling is used as a permanent or temporary home is immaterial, so long as it is maintained for that purpose. Thus the definition includes not only the mansion on Main Street, but also the summer cottage, and the tin shack in the hobo jungle. It does not include an abandoned dwelling. * * *"

The record establishes beyond any reasonable doubt that the premises at 136 High Street was maintained as a dwelling, and used as a dwelling on at least a temporary basis. Photographs of the home indicate that it was in reasonably good repair, and contained at least some furniture, including a bed. Stephens was admittedly attempting to make mortgage payments on the home.

The home was insured; the expected insurance proceeds, according to Stephens, being the motive for the arson. Further, the record is replete with statements by Stephens that he lived in the house on a part-time basis after appellant moved out, for example:

"Q. [by the prosecutor] On February 6th, 1983, where did you live?

"A. [by Stephens] I think i [sic] was staying at my house.

"Q. Where was that?

"A. 136 High Street in Wilmington. * * *

"Q. Had you moved out of your house prior to February 6th?

"A. Yes, Donnie [appellant] and his wife were staying there.

"Q. And you said you were staying there at that time on [sic] February though.

"A. Yeah, I had moved back in. * * *

"[On cross-examination by defense counsel]

"Q. Now, why don't you tell the people where you were living—was it Washington Court House with your mother or Wilmington—where were you?

"A. I was really staying both places."

Appellant would have us hold that because Stephens testified that he was by design not present in the house during the arson attempt, and because Stephens, also by design, moved his more valuable furniture and other belongings out of the house, the house was "abandoned." To accept this position is to contort the meaning of the term "abandonment" almost beyond recognition. Far from relinquishing all control over the premises, Stephens intended to use his right of ownership and his insurable interest in the property to collect the insurance proceeds. He lived in the house on a part-time basis until Bock was to commit arson upon it. Further, the record indicates that the home

was "maintained" as a dwelling, as contemplated by the Committee Comment to R.C. 2909.01, even after Stephens vacated it so it could be burned down.

A trial court may not grant a motion to acquit if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime charged has been proven beyond a reasonable doubt. *State v. Thomas* (1980), 61 Ohio St. 2d 223, 232-233 [15 O.O.3d 234]. See, also, Crim. R. 29(A). We find the state of the evidence in the case at bar to be such that reasonable minds could differ as to whether the dwelling in question was an occupied structure. Accordingly, the trial court did not err by failing to grant appellant's motion to acquit on the charges of aggravated arson and attempted aggravated arson, and appellant's second assignment of error is overruled.

Appellant's third assignment of error asserts that the trial court erred by giving an incorrect instruction to the jury which had the effect of taking the choice of the lesser-included offense of arson from the jury. The court instructed the jury as follows on the lesser-included offense of arson:

"Before you can find the defendant guilty of arson, you must find, beyond a reasonable doubt that on or about the 6th of February, 1983 in Clinton County, Ohio, the Defendant by means of fire, knowingly created a substantial risk of physical harm to property of another with purpose to defraud without his consent."[1]

It is appellant's position that as the evidence conclusively establishes that Stephens consented to have his home at 136 High Street burned down by appellant, it would be impossible for the jury to find appellant guilty of arson on the basis of the charge quoted above. Although the record indicates that appellant failed to object to the instruction at the time it was read to the jury, appellant urges that the mistake constitutes plain error. We disagree.

The error in the charge is the addition of the words "without his consent." Appellant's position is that these words can only be construed to mean "without the property owner's [Stephens'] consent." However, the context of the instruction lends itself to another possible construction: "Without the consent of the party being defrauded." Given the facts of the case at bar, that party could only be Stephens' insurance company, as the evidence indicates that Stephens consented to the arson. In fact, we would consider this to be a more logical interpretation of the charge in light of the evidence presented at trial. If interpreted in this manner, the alternative of finding appellant guilty of the lesser-included offense of arson would have still been available to the jury.

A claimed error not objected to will not be noticed on appeal unless it rises to the level of plain error. See *State v. Underwood* (1983), 3 Ohio St. 3d 12; *State v. Cooperrider* (1983), 4 Ohio St. 3d 226. To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice. *Underwood, supra; Cooperrider, supra.* The instant misstated instruction does not satisfy these rigorous requirements because the jury could reasonably have interpreted the instructions in a manner so as to fulfill the intention of the trial court and preserve

---

[1] The charge, if given correctly, would have read simply: "* * * knowingly created a substantial risk of physical harm to property of another with purpose to defraud." See R.C. 2909.03(A)(2).

the possibility of conviction of the lesser-included offense of arson.

Therefore, appellant's third assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., KOEHLER and JONES, JJ., concur.