**The STATE of Ohio, Appellee,**

v.

**ALLEN, Appellant.**

[Cite as *State v. Allen* (1995), 102 Ohio App.3d 696.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67278.

Decided May 1, 1995.

---

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Anthony J. Bondra* and *George J. Sadd,* Assistant Prosecuting Attorneys, for appellee.

*Patricia J. Smith,* Assistant Public Defender, for appellant.

---

PATRICIA ANN BLACKMON, Presiding Judge.

Jeffrey Allen, defendant-appellant, appeals the trial court's convicting him of robbery, uttering, and receiving stolen property. Allen assigns the following two errors for our review:

"I. Mr. Allen was denied his right to due process and a fair and impartial trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section XVI of the Ohio Constitution because of the following errors:

"A. Judge's apology and comment as to the credibility of the witness.

"B. Judge's statement to alternate juror that he would be notified when the jury returned a guilty verdict.

"C. The improper shifting of the burden of proof to the defendant in the state's closing argument.

"II. The verdict finding Jeffrey Allen guilty was against the manifest weight of the evidence."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the trial court. The apposite facts follow.

On November 14, 1993, Jenny Weaver went to an ATM machine to make a deposit. Leaving her car running, she opened her car door and was about to exit when Jeffrey Allen, defendant-appellant, approached her and asked what time it was. Weaver replied that it was 1:21 p.m. After standing around for a few seconds, Allen suddenly grabbed Weaver and pulled her from her car. Once outside the car, Weaver struggled with Allen for about fifteen seconds trying to get him out of the car. During the struggle, Allen forcibly removed Weaver's purse from her. Weaver was unsuccessful in her attempt to wrest Allen from the car and he drove away. Inside Weaver's purse were her checkbook, money, keys, car phone, Christmas presents, and other personal items.

The incident was witnessed by David Boyd, a maintenance employee who had been working inside the bank building. Boyd allowed Weaver into the building

and called police. Weaver described her assailant to police as a black male in his mid to late twenties, 5'8" to 5'10", one hundred sixty-five to one hundred eighty pounds, with a slight moustache. She also told police the assailant was "fairly good looking." The following day, based upon Weaver's descriptions, the police generated a composite sketch of the assailant.

Weaver alerted the bank that her checks had been stolen. A bank representative later called her and said that one of the stolen checks had been cashed. The check, dated November 15, 1993, was made out to "Johnny Dumas" and was for $48.88. Police visited the bank where the check was cashed and interviewed Rozetta Young, the teller-supervisor who okayed the check. Young said that a childhood acquaintance, Allen, came into the bank with his nephew, Johnny Dumas. Allen told Young that Dumas had done some work for someone and asked her to okay the check despite the fact that Dumas did not have an account at the bank and the check was from another bank. Allen said he would pay the check if there was any problem.

The police obtained a picture of Allen and placed it in a photo array. Weaver identified Allen as her assailant. Boyd also identified Allen as the man who committed the robbery. The police discovered that Allen was on probation. When he appeared at his regularly scheduled appointment with his probation officer, Allen was arrested. Later that day, Allen was identified by both Weaver and Boyd in a lineup.

Allen told police he did not commit the robbery. He said Dumas robbed Weaver. According to Allen, Dumas asked him for help cashing a check. Allen claimed that Dumas picked him up and drove him to the bank where the check was cashed. Allen said Dumas gave him $20 for his help. After hearing Allen's account of the crime, police showed Weaver and Boyd a picture of Dumas. Both said that Dumas was not the robber.

At trial both Weaver and Boyd testified and identified Allen as the robber. Young testified that Allen did most of the talking at the bank when the stolen check was cashed. Dumas testified in Allen's defense. Dumas stated that he had robbed Weaver. Contrary to the testimony of Weaver and Boyd, Dumas initially testified that the robbery occurred at approximately 7:40 a.m. However he later testified that his estimate of the time was only approximate because he was not wearing his watch. Allen testified and said that he was visiting relatives all day on the day of the robbery. His two teenage nephews testified that Allen was with them watching football all that day. Allen was convicted of robbery, uttering, and receiving stolen property. He was sentenced to consecutive terms of seven to fifteen years for robbery, and eighteen months each for uttering and receiving stolen property. This appeal followed.

In his first assignment of error, Allen argues that several errors by the trial court deprived him of a fair trial. He first argues that the trial judge made the following improper comment at the conclusion of Weaver's testimony:

"Ms. Weaver, you are excused with the thanks of the Court. We thank you very much for coming here, being open and candid with us, and on behalf of this Court, I am sorry that the incident occurred to you. Thank you very much."

During a subsequent recess, Allen's trial counsel moved for a mistrial, claiming the comments were prejudicial to Allen. The trial court denied the motion, explaining that nothing had been said to implicate Allen. Allen now argues that the court's comments suggested to the jury that Weaver was a highly credible witness. He argues that the trial court violated its duty of impartiality by improperly commenting on the credibility of a witness.

A trial judge must remain impartial at all times and avoid making comments that might influence the jury. *State v. Boyd* (1989), 63 Ohio App.3d 790, 794, 580 N.E.2d 443, 445. A statement made by the trial judge within the hearing of the jury which may be interpreted as an opinion by the judge about the credibility of witnesses or about the facts of the case constitutes prejudicial error. *Id.* Allen argues that by thanking the victim for "being open and candid," the trial judge expressed her opinion about the victim's credibility. The state argues that any error in the trial court's comments was cured by the court's final jury instructions, which included an admonition that "if during the course of this trial, this Court said or did anything that you consider to be an indication of my view on the facts, you are considered to disregard them." The judge gave a similar instruction to the jury in its opening instructions.

We agree with Allen that a trial court's description of a witness's testimony as "open and candid" reflects an opinion as to the witness's credibility. However, the trial court's general jury instructions included an order not to consider any perceived comments by the trial court on witness credibility.

Under the circumstances, we find that the trial court's comments constituted harmless error. Under Crim.R. 52, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Aside from the victim's identification of Allen, the state also produced testimony from eyewitness Boyd, who positively identified Allen as the robber both in court and out of court. Even without Weaver's identification of Allen, it was highly unlikely that Allen would have been acquitted if the judge's comments had not been made. Under the circumstances, we are unable to conclude that the outcome of Allen's trial would likely have been different if the court had not made the improper comments. See *State v. Brown* (1992), 65 Ohio St.3d 483, 605 N.E.2d 46.

Therefore, we find that the trial court's comments to the victim do not constitute reversible error.

Allen also challenges the following statement made by the trial court while instructing an alternate juror:

"You are not to discuss this case or tell anyone how you would have voted until after the jury has returned a verdict of guilty, and I'm certain—and what usually happens is, somebody will tell you tomorrow when the decision is reached, or they'll call you at home, because I'm certain you would like to know as well. You are now excused and may return to the jury room, and again, we thank you for your service in this case."

After a sidebar conference, the court made the following statement to the jury:

"Ladies and gentlemen of the jury, I believe I misstated, I said, 'until the jury reaches a decision.' So you kindly disregard any statements that I made with respect to our alternate juror in this case."

Allen argues that despite the curative instruction, the trial court's comment was prejudicial because it indicated the judge's opinion that Allen should be found guilty. We disagree. The trial judge immediately instructed the jury to disregard her misstatement, and there is no indication that her comment was anything more than an inadvertent error. Jury instructions should be viewed as a whole. The trial court's instructions to the jury adequately explained that the jury, as factfinder, was responsible for rendering a verdict of guilty or not guilty, depending upon its impression of the evidence presented at trial. The jury was instructed to return a verdict of not guilty if they were not convinced of Allen's guilt beyond a reasonable doubt. In light of the overall content of the jury instructions, we find that the court's prompt curative instruction was sufficient to cure any error in the court's misstatement.

Allen also argues that the prosecutor made improper comments during closing argument. The prosecutor told the jury that the defense "indicated to you that they were going to prove to you that Johnny Dumas did the crime." Allen's trial counsel objected to the comments at trial and asked that they be stricken from the record.

The trial court replied, "So noted. Anything else?" According to Allen, the prosecutor's comment was an improper attempt to shift the burden of proof to Allen. Allen's trial counsel objected to the comment by the prosecutor. A discussion of the objection was held off the record, after which the prosecutor continued with his closing argument. The record does not reveal the grounds for the objection or whether Allen sought to have the comment stricken from the record. Without reviewing the content of the off-the-record discussion, we are

unable to determine whether Allen provided a proper basis for his objection. More important, at the time Allen raised his objection, the prosecutor had already made two similar comments without objection. Under the circumstances, Allen waived any error in the comments.

We find that the challenged comment by the prosecutor did not constitute plain error. Because the trial court properly instructed the jury about the burden of proof in criminal cases, we cannot say that the outcome of Allen's trial would have been different if not for the challenged comment. See *State v. Bock* (1984), 16 Ohio App.3d 146, 150, 16 OBR 154, 158, 474 N.E.2d 1228, 1232. To the extent that it pertains to comments made by the prosecutor, Allen's first assignment of error is overruled.

In his second assignment of error, Allen argues that the jury verdict was against the manifest weight of the evidence. He points out that Dumas confessed to the robbery and Allen presented a credible alibi. A verdict will not be reversed as against the manifest weight of the evidence unless the court, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, finds that the jury clearly lost its way in resolving the conflicts in the evidence and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 721.

In this case, we find no evidence that the jury lost its way in resolving the conflicting testimony. The composite sketch generated from the description given by Weaver the day after the robbery closely resembled Allen. Allen was positively identified by Weaver and Boyd in a photo array and a lineup conducted before trial. Both witnesses identified Allen in court as the robber. In reaching its conclusions about the credibility of the witnesses, the jury was free to disbelieve Dumas's testimony that he committed the robbery. We find there was substantial evidence from which the jury could find the crime of robbery was proven beyond a reasonable doubt. See *Boyd,* 63 Ohio App.3d at 795, 580 N.E.2d at 446. Consequently, we overrule Allen's second assignment of error.

*Judgment affirmed.*

MATIA and NAHRA, JJ., concur.