Defendant-appellant, William H. DeCamp, appeals his conviction in the Mason Municipal Court for driving while under the influence of alcohol ("DUI"), in violation of Mason Municipal Ordinance 333.01(A)(1). We affirm.
On January 17, 1998, at approximately 12:40 a.m., Mason Police Officer Don Cope was patrolling the area of S.R. 741 and Kings Mill Road. Cope observed appellant make a left-hand turn onto 741, eastbound. Cope then observed appellant's vehicle go left of center. Although construction was in progress, the lanes were clearly marked by a double yellow line. Appellant then came back into his lane and briefly crossed the line on the right-hand side of the road. As appellant proceeded into a curve, he swerved completely onto the left side of the roadway and was traveling east in the westbound lane. As appellant came out of the curve, he returned to his proper lane. Cope then initiated a traffic stop.
While reviewing appellant's license, Cope noticed a strong odor of an alcoholic beverage. Appellant stated that he had consumed two beers. Cope then asked appellant to step out of his car. As he exited, appellant used his car to steady himself. Cope smelled a strong odor of an alcoholic beverage on appellant's breath and requested that appellant perform field sobriety tests. Appellant had trouble keeping his eyes closed, swayed, and did not recite the alphabet correctly during the ABC test. Appellant swayed somewhat and missed on four attempts at the finger to nose test. Appellant was unable to walk heel to toe and stepped off the line twice in nine steps in the walk and turn test. Finally, during the horizontal gaze nystagmus test, appellant displayed six out of six clues indicating that an individual is possibly under the influence of alcohol. Cope believed that appellant was under the influence of an alcoholic beverage and placed him under arrest.
At the Mason Police Department, Cope requested that appellant submit to a breath test. Appellant was read the standard implied consent form and also informed of his right to an independent test. Appellant indicated that he wanted to speak to his attorney. Appellant made a telephone call and told Cope that he had reached an answering service and an attorney would be calling him back. Appellant made at least two more such calls, but no attorney ever called back. After approximately an hour, Cope told appellant that he needed to know if appellant was going to take the test or not because he was getting close to the state's two-hour time limit. Appellant told Cope that he would not take the test without first talking to his attorney. Cope then marked appellant as having refused to take the test.
Appellant filed a motion to suppress alleging that the officer did not have a reasonable basis for the stop and that he did not have probable cause for the arrest. Appellant also requested that any statement that appellant had "refused" to take the breath test be suppressed as he was attempting to exercise his right to speak with his attorney.
The trial court denied appellant's motion to suppress and a jury trial was conducted on April 16, 1998. Cope testified concerning the traffic stop, field sobriety tests, appellant's arrest, and appellant's subsequent failure to submit to the breath test. Appellant testified that he was driving safely, but was unfamiliar with the road and that the construction in the area caused him to swerve. Appellant stated that his ability to drive had not been affected by two beers consumed between 9:00 p.m. and 12:30 a.m. at two different restaurants. Appellant acknowledged that he was nervous and said the ABC's quickly, but stated that he believed he had performed well on the other field sobriety tests.
Appellant also testified that Cope had not warned him regarding a two-hour limit for the breath test, and had never stated that if his lawyer did not call back within that period of time, Cope would determine that appellant had refused to take the test. Appellant stated that he never refused to take the breath test.
Appellant also presented testimony of one friend who had been with him at two restaurants that evening. That friend testified that, in his opinion, appellant was not drunk and he would have trusted him to drive family members. Another friend who picked appellant up at the police station testified that he appeared sober at that time and she would have felt no trepidation in allowing him to drive.
During part of his closing argument, the prosecutor noted that appellant had been treated fairly by Cope as he had given appellant over an hour to agree to perform the breath test. Appellant objected to this portion of the prosecutor's closing argument, stating that there had been no testimony as to the duration of time. The prosecutor also stated that the friends' names had not been disclosed by the defense in discovery. Appellant again objected, but the judge noted that there was a dispute as to whether the witnesses had been disclosed. The prosecutor also commented on appellant's failure to take the breath test and his failure to obtain an independent test.
The jury found appellant guilty. Appellant's counsel then asked the jury what testimony had been crucial. One juror responded that the failure to take a breath test either at the police station or independently had been a concern to him. Appellant moved for a new trial, citing the juror's comment. Appellant also claimed that the prosecution had improperly shifted the burden of proof for the jury, requiring appellant to prove his innocence by independent testing. Appellant's motion for a new trial was denied. Appellant has raised two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AFTER HIS UNLAWFUL STOP.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN OVERRULING THE REPEATED OBJECTIONS TO THE PROSECUTORIAL MISCONDUCT DURING OPENING STATEMENT AND CLOSING ARGUMENT AND TO GRANT HIS MOTION FOR A NEW TRIAL BASED ON THESE OBJECTIONS.
In his first assignment of error, appellant has actually raised three issues: the lawfulness of the initial stop; the lawfulness of his continued detention for the purpose of conducting field sobriety tests; and the use of his refusal to take a breath test as evidence against him. We find no merit to any of appellant's sub-issues.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. Maumee v. Johnson (1993), 90 Ohio App.3d 169,171. When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. The appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688, 691.
Appellant first claims that the officer lacked a reasonable and articulable suspicion to justify his stop. The Ohio Supreme Court has determined that "where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution * * *."Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11. See, also,Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,1772 (officer's observation of a traffic violation justifies an investigative stop). The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, 178. After reviewing the record, we find that the initial traffic stop was based upon the officer's observation that appellant had committed at least one lane violation. Accordingly, we find that the stop was justified.
Appellant next challenges his continued detention. Appellant claims that there was no indication that he was under the influence because he did not have trouble retrieving his driver's license and did not have glassy or bloodshot eyes, slurred speech, or disheveled clothing. Appellant argues that the mere odor of alcohol was insufficient to justify his continued detention. However, the record indicates that appellant had been observed committing a lane violation, that he admitted to drinking, and that there was a strong odor of alcohol in his vehicle. This provided the officer with reasonable suspicion to investigate further by conducting field sobriety tests. Police do not need probable cause to conduct field sobriety tests. Reasonable suspicion of criminal activity is all that is required to administer the tests. State v.Herman (Aug. 21, 1995), Warren App. No. CA95-02-014, unreported. See, also, Columbus v. Anderson (1991), 74 Ohio App.3d 768,770. In determining whether there is reasonable suspicion of criminal activity, an arresting officer must point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant the intrusion. Middletown v. Profitt (Apr. 24, 1989), Butler App. No. CA88-09-135, unreported, quoting Terry v. Ohio (1968),391 U.S. 1, 88 S.Ct. 1868. On review of the record, we find that the officer had reasonable suspicion that appellant was impaired, and thus his conduct in asking appellant to perform field sobriety tests was proper.
Finally, appellant argues that all references to his "refusal" to take the breath test should have been suppressed. The evidence on this issue was admissible. In Maumee v. Anistik
(1994), 69 Ohio St.3d 339, the Ohio Supreme Court reviewed several previous cases where breath tests had not been conducted. In Columbus v. Mullins (1954), 162 Ohio St. 419, for instance, the court held that it was prejudicial error to admit testimony of a police chemist that such tests were infallible and would be determinative of the defendant's guilt or innocence. The Supreme Court held that such evidence was prejudicial because the defendant's refusal to submit to testing was "not absolute but, rather, conditional in that it was predicated upon his own physician being present." InWesterville v. Cunningham (1968), 15 Ohio St.2d 121, on the other hand, the defendant provided no reason for refusing to take the test and the Supreme Court held that such an unequivocal refusal would have probative value on the question of intoxication and would not violate the defendant's privilege against self-incrimination.
In Anistik, the defendant initially expressed concerns that her medication might affect the results. After receiving assurances that it would not be affected, she agreed to take the test. 69 Ohio St.3d at 340. However, after being denied access to the use of a rest room and after contacting an attorney, she refused to take the breath test. The Supreme Court held that in all three circumstances, a conditional refusal (Mullins), an unequivocal refusal (Cunningham), or combination (Anistik), the following jury instruction was appropriate:
 Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his [or her] breath to determine the amount of alcohol in his [or her] system, for the purpose of suggesting that the defendant believed he [or she] was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol.
Id. at 344.
The court held that this instruction provided the proper neutrality, allowing the jury to weigh all the facts and circumstances surrounding a decision not to submit to testing.Id. The clear import of this decision is that such evidence is admissible, the factfinder then weighs its relevance on the ultimate issues in the case. Therefore, we find that the trial court did not err in failing to suppress evidence concerning appellant's failure to submit to the breath testing. See, also,State v. Bertram (May 8, 1998), Hamilton App. No. C-960005, unreported (absent a Fourth or Fifth Amendment violation or an implicitly created statutory exclusion based upon noncompliance with the warning for his refusal provided in R.C.4511.191[C][2][b], defendant cannot resort to the exclusionary rule to preclude evidence of his refusal to take a breathalyzer test, and trial court was without authority to suppress evidence of that refusal).
In his second assignment of error, appellant argues that the trial court should have granted his motion for a new trial. He argues that the prosecutor made improper comments during both opening and closing arguments. These comments centered on appellant's request to speak with his attorney and his failure to obtain independent breath testing. For instance, during opening arguments the prosecutor stated that [appellant] "tried to call an attorney and was unable to reach anybody and refused to take this test." When appellant's counsel objected, the judge properly noted that he would "get a chance to indicate what was said and then [the jury would determine] * * * what was said." As noted above, this ruling was completely consistent with the relevant supreme court decisions.
In closing argument, the prosecutor made the following comment which appellant argues was prejudicial and improperly shifted the burden of proof:
 Now there comes a time in everyone's life when we have to be accountable for what we did, whether it's in grade school, high school, or any other part of our life. We have to accept responsibility for what we do. And that's all we're asking in this case. In this case the defendant refused to do that, so you have to decide whether or not he was under the influence on that early morning.
Appellant also objected to the prosecutor's charge during closing that he had not provided his witnesses to the state in discovery.[1] Finally, appellant complains about a comment implying that appellant refused the police breath test and did not get his own test because he knew he would fail it. Appellant did not object to this comment, but now argues that taken together, the prosecutorial remarks were designed to improperly shift the burden from the state to appellant.
The relevant inquiry a reviewing court must apply in assessing the validity of a claim of prosecutorial misconduct is: (1) whether the prosecutor's remarks were indeed improper; and, (2) if so, whether a substantial right of the accused was adversely affected. State v. Williams (1995), 73 Ohio St.3d 153,168-69. The prosecution is normally accorded a degree of latitude in closing arguments. State v. Smith (1984), 14 Ohio St.3d 13. A prosecutor may comment on the evidence in the record. State v. Tyler (1990), 50 Ohio St.3d 24, 31. A prosecutor also may properly comment upon the defendant's failure to present exculpatory evidence during closing arguments. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193. The prosecutor's brief comments concerning appellant's failure to submit to the breath test did not impermissibly shift the burden of proof to the state. As discussed above, the evidence on this issue was admissible, and the prosecution and the defense were both permitted to advance their theories concerning appellant's failure to submit to testing. Under these circumstances, appellant has not demonstrated any prosecutorial misconduct. Further, appellant has not demonstrated that his substantial rights were adversely affected. Because the trial court properly instructed the jury on the burden of proof in criminal cases, we cannot say that the outcome of appellant's trial would have been different if not for the challenged comments.[2] See State v. Allen (1995),102 Ohio App.3d 696, 699. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] The trial court ruled that there was a dispute as to whether the names of the witnesses had or had not been provided. Discussion
[2] The juror's comments concerning factors influencing his verdict were incompetent and inadmissible under Evid.R. 606(B), "[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith."