OPINION
The defendant, Derrick Earl Stark, Sr., was tried by jury in the Court of Common Pleas of Montgomery County and found guilty of trafficking in crack cocaine in violation of R.C. 2925.03(A), and from the judgment and sentence thereupon entered in the trial court, Stark has filed a notice of appeal to this court.
In August 1997, Detective Scott Culham of the Dayton Police Department arrested one Steven Blackshear for drug trafficking, and soon thereafter, Blackshear made an agreement whereby he became an informant for the police. Subsequently, Blackshear provided Stark's name to Culham as a drug supplier, and Culham recognized the name as that of one who had been investigated for drug involvement for about two years.
Thereafter, Culham orchestrated a plan whereby Blackshear was to buy cocaine from Stark, and in furtherance of the plan, and after some preliminary steps, Blackshear and Stark finalized plans for the sale of six ounces of cocaine at the parking lot of a Dayton supermarket. Culham provided Blackshear with $4800.00 for the purchase, and he was wired to record the exchange at the time of the purchase.
On September 10, 1997, at about 6:00 p.m., the informant, Blackshear, followed by Culham and Detective John Brands, drove to the designated parking lot where the transaction was to take place. At about the same time, crews were being placed in position to observe and videotape the sale. Stark arrived shortly thereafter, and Blackshear got into his car. Stark then gave the informant a thermos-type coffee mug which contained two bags of what was later determined to be 142.3 grams, or a little more than five ounces, of crack cocaine. However, no money changed hands, Blackshear claiming that Stark indicated that he would get all of the money later when he provided the other ounce of cocaine. Thereafter, Blackshear raised the hood of his car, signaling to the observing officers that the sale was complete, and Stark was thereupon arrested for trafficking in crack cocaine.
In the present appeal, the appellant has set forth three assignments of error, the first of which has been stated as follows:
 THE FAILURE OF THE COURT TO CAUTION THE JURY TO SCRUTINIZE WITH CARE AN ALLEGED INFORMANT'S UNCORROBORATED TESTIMONY IMPLICATING AN ACCUSED IN A DRUG TRANSACTION, AND THE FAILURE TO INSTRUCT THE JURY AS TO HOW THE TESTIMONY OF A POLICE OFFICER SHOULD BE EVALUATED WAS PLAIN ERROR AND NECESSITATES REVERSAL.
In substance, the appellant argues in support of the alleged error that the trial court should have voluntarily given a special instruction to the jury upon the credibility of Blackshear, and that a special instruction should have been given as to the role of the police officers. However, the record discloses that the jury was informed early in the trial that Blackshear was a drug dealer and that he had made a deal with the police as the result of his arrest for drug trafficking. In fact, the theory of the defense, which was possibly the only tactic available, was to smear Blackshear and undermine the involvement of the police with him. During the trial, the defense vigorously pursued the issue of credibility, and the jury undoubtedly knew, without the benefit of any undue influence, that Mr. Blackshear was not being introduced as a paragon of virtue or a pillar of society. CompareState v. Draughn (1992), 76 Ohio App.3d 664. In fact, the defense evidence depicting Blackshear as an unsavory character, without more, gave additional meaning to the standard jury instruction on the credibility of witnesses. Furthermore, it is inconceivable that the alleged omission in the court instructions had any material effect upon the outcome of the case. See State v.Underwood (1983), 3 Ohio St.3d 12.
However, in any event, the first assignment of error is vulnerable for another cogent reason. According to the record, the appellant did not object to any error of omission in the jury instructions, and the Supreme Court of Ohio has consistently held that such a failure constitutes a waiver of any alleged error.State v. Scott (1986), 26 Ohio St.3d 92; State v. Fanning (1982),1 Ohio St.3d 19. See also, Crim. R. 30(A).
Under Crim. R. 52(B), an appellate court has the discretionary power to review an error which was waived by defendant's failure to object where there is a possibility of plain error, but "plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice". State v. Long
(1978), 53 Ohio St.2d 91. Here, we perceive no error in the instructions, much less any failure that might qualify as "plain error", and the first assignment of error is overruled.
The second assignment of error has been presented as follows:
 THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE UNDER FAVOR OF RULE 29(C), OHIO RULES OF CRIMINAL PROCEDURE.
Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261. Furthermore, a review of the evidence presented to support a conviction does not include an interpretation of the evidence or a determination of the credibility of the witnesses. State v. Misch (1995),101 Ohio App.3d 640.
In support of this alleged error, the appellant argues that people of Blackshear's ilk "come from the criminal milieu and should never be trusted" and Stark further contends that the corroborated testimony of Detective Culham was not "straightforward and compelling". But, as heretofore indicated, the determination of the issue of credibility was an exclusive prerogative of the trier of the facts. State v. DeHass (1967),10 Ohio St.2d 230.
The trial court described the evidence, including, but not limited to audio tapes, video tapes, and direct testimony, as "overwhelming", and there appears to be no doubt that such evidence, even if not overwhelming, was impressive and wholly sufficient to overcome the Crim.R. 29(C) motion. Without further discussion, therefore, the second assignment of error is overruled.
The third assignment of error has been alleged as follows:
 COUNSEL FOR THE STATE WAS GUILTY OF PREJUDICIAL MISCONDUCT WHEN HE VOUCHED FOR THE CREDIBILITY OF KEY PROSECUTION WITNESSES.
The alleged error alludes to two paragraphs from the prosecutor's eight-page final argument, both of which attempt to bolster the testimony of the State's witnesses as follows:
 "You've heard testimony from witnesses. You've heard testimony from Detective Culham. I submit to you that his testimony was honest and truthful, as truthful as it comes. You've seen him subject to vigorous cross-examination. He did not falter. He answered the questions. Why? Because truth is stubborn. Truth comes out. If somebody's telling the truth, the story flows. The story meshes. There's no inconsistency."
* * *
 "You've heard from Steven Blackshear. I don't particularly care for Steven Blackshear. I'm glad he's not my neighbor. But I think he was truthful. I think that he knows that he did something wrong and took his lumps. I respect that. I respect the fact that he got here, and he testified to you honestly. * * * He testified truthfully. He testified honestly. And he was also subject to vigorous cross-examination. And his testimony was unfaltered too, cause the truth is a stubborn thing, and he told the truth."
Assuming that the prosecutor went beyond the bounds of propriety in commenting upon the credibility of the testimony of the State's witnesses, it nonetheless appears that such comments were substantially, if not completely, obscured by the entire closing arguments of both the prosecution and the defense. It is fundamental that closing arguments must be considered in their entirety to determine whether prejudice intervened in the proceedings (State v. Frazier (1995), 73 Ohio St.3d 323), and "the touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor." State v. Bey (1999), 85 Ohio St.3d 487,495.
In the present case, the state of the evidence overshadows the final arguments, and nothing appears from the record to suggest that the conduct of the prosecutor deprived the defendant of a fair trial. See, State v. Maurer (1984), 15 Ohio St.3d 239. See also, State v. Loza (1994), 71 Ohio St.3d 61; State v.Carpenter (1996), 116 Ohio App.3d 615.
Furthermore, the record discloses that the third assignment of error carries the same infirmity as the first assignment of error. The appellant, having failed to object to the alleged improper statements made during closing arguments, has waived the claimed error. And "to rise to the level of plain error, it must appear from the face of the record not only that the error was committed, but that except for the error, the result of the trial would have been otherwise and that not to consider the error would result in a clear miscarriage of justice". State v. Bock (1984),16 Ohio App.3d 146. See, also, Underwood, supra.
Here, neither defense counsel nor the trial court can be severely faulted for failing to be aroused or provoked by the overzealous transgressions of the prosecutor because neither comment upon the credibility of the State's witnesses could have had any critical bearing upon the outcome of this case. Accordingly, the third assignment of error is overruled.
Finding no prejudicial error in the proceedings in the Common Pleas Court, the judgment will be affirmed.
BROGAN, J., and YOUNG, J., concur.
(Hon. JOSEPH D. KERNS, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).