OPINION
Defendant-appellant, Derrick Grays, appeals his aggravated robbery conviction in the Madison County Court of Common Pleas. The conviction is affirmed.
On May 18, 2001, around 11:00 p.m., Richard Chappel reported to the London, Ohio police that he had been robbed at gunpoint. Chappel was brought by Officer Mike Albright to the London Police Department where he provided a written statement of the events. In the narrative, Chappel states that he was given a ride by two men, one Caucasian, the other African-American, to Chester Jackson's house. En route, the African-American individual pulled out a gun, pointed it at him, and directed Chappel to give him his money, or "he would shoot."
Chappel was later interviewed by Officer Albright. During the interview, Chappel stated that he had previously met the black male in the car, who had been introduced as "Derrick." Chappel stated that, during the course of the robbery, Derrick said to him: "give me your money; give me your wallet. If you don't give it to me, I'm gonna blow your brains out." During the interview, Chappel also provided a description of the vehicle.
Based on Chappel's description of the vehicle, the investigating officers believed that the Caucasian driver of the vehicle was David Harris. Chappel later picked out Harris from a photo array as the driver of the vehicle. Harris was arrested, and confessed to his role in the robbery. He stated that he, Chris Cain, and another person, "Derrick," were riding around in his car. Harris did not know Derrick's last name. After some time, he dropped Cain off at a friend's home. He and Derrick continued riding around and eventually picked up Chappel.
According to Harris, Chappel wanted to buy drugs from Derrick. As he drove, Harris saw Derrick strike Chappel, pull a gun, hold it to Chappel's head and demand money. Once Chappel handed over his money, Derrick pushed him from the car.
Harris provided the police with a description of Derrick's car. He told the police that Derrick was a cousin of Chris Cain, and that he lived in Columbus. From this information, the police were able to determine appellant's identity. The police later provided Harris with a photo of appellant, and Harris confirmed that appellant was the African-American male in the car with him that evening.
Appellant was arrested on May 18, 2000, and indicted on one count of aggravated robbery with a firearm specification. Appellant filed a motion to suppress, which the trial court granted in part, suppressing evidence of a gun found in appellant's apartment, as well as statements made by appellant regarding the gun's location. However, the trial court denied appellant's motion to suppress the identification made by Chappel at a preliminary hearing. Appellant was found guilty by a jury, and sentenced accordingly. He appeals the conviction, raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE UNNECESSARILY SUGGESTIVE IDENTIFICATION OF APPELLANT BY THE VICTIM, RICHARD CHAPPEL, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY ARTICLE I, SECTION 10, 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND THIRTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.
 The first time Chappel identified appellant was at a preliminary hearing when appellant was seated at the defendant's table. Appellant was also one of only a few, if not the only, African-American male in the courtroom. Prior to the court appearance, Chappel was never asked to identify appellant from a lineup or photo array. Appellant filed a motion to suppress the identification made by Chappel at the preliminary hearing, arguing that it was unduly suggestive. The trial court overruled the motion, finding that although unnecessarily suggestive, the identification was still reliable.
Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. State v. Smith (1997), 80 Ohio St.3d 89, 105; State v.Anderson (1995), 100 Ohio App.3d 688, 691. An appellate court must defer to the trial court's factual findings if they are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 593, appeal dismissed, 69 Ohio St.3d 1488. Accepting the trial court's factual findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." Anderson at 691.
In order to suppress an identification, the court must find that the procedure employed was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Neil v. Biggers (1972),409 U.S. 188, 198-199, 93 S.Ct. 375, 381-382. "While the practice of showing suspects singly to witnesses for identification is widely condemned, whether such procedure violates due process depends on the totality of the surrounding circumstances." Zanesville v. Osborne (1992),73 Ohio App.3d 580, 586, citing Stovall v. Denno (1967), 388 U.S. 293,87 S.Ct. 1967.
The state concedes that the identification procedure was unnecessarily suggestive. However, reliability is the linchpin in determining the admissibility of identification testimony. Even if the identification procedure was suggestive, so long as the challenged identification is reliable, it is admissible. Manson v. Brathwaite (1977), 432 U.S. 98,114, 97 S.Ct. 2243, 2253. The factors to be considered in determining whether the identification was reliable include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers at 199, 93 S.Ct. at 382.
Chappel's identification was made on May 31, 2000, thirteen days after the robbery. Chappel testified that he had met appellant in April 2000 and had seen him three times prior to the robbery and that he recognized appellant during the course of the robbery. He stated that he was in the car with appellant for approximately twenty minutes, and was able to clearly see appellant during the robbery. Chappel also stated that he was "one-hundred percent" certain that appellant was the same person who held the gun to his head and took his money. While Chappel acknowledges having consumed alcoholic beverages before the incident, he testified that he had, at most, two or three alcoholic drinks during the course of the evening.
These facts establish that Chappel's identification is supported by indicia of reliability. He had ample time to observe appellant and recognized him from prior meetings. The identification was made within reasonable time proximity to the occurrence, and Chappel himself maintains that he is certain that he correctly identified appellant as the perpetrator.
Appellant, citing State v. Miles (1988), 55 Ohio App.3d 210, contends that the motion to suppress should have been granted because the state failed to offer evidence showing why less suggestive means of identification were not employed. Appellant's reliance on this case is misplaced. In Miles, the court found that the eyewitness identification was unreliable, in large part because the witness himself demonstrated the unreliability of his identification: he testified that he saw the defendant on the street while the defendant was in fact incarcerated. Based on the witness' assertion, the court concluded that the identification, in addition to being unduly suggestive, was also likely to produce an unreliable result. In the present case, the facts indicate that Chappel's identification of Harris was reliable, even though the circumstances were unduly suggestive. Accordingly, we find no error in the trial court's decision denying the motion to suppress the identification.
Appellant also cites numerous academic studies which challenge the accuracy of eyewitness identifications. However, the record reveals that appellant never called these studies to the attention of trial court, and appellant has cited no legal authority to support the contention that such studies should have been relied on by the trial court when ruling on the motion to suppress. Accordingly, we find this argument to be without merit. The assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING EVIDENCE THAT THE PROSECUTION FAILED TO DISCLOSE AS REQUIRED BY CRIM.R. 16 THEREBY PREJUDICING APPELLANT AND DENYING APPELLANT HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS AS GUARANTEED BY THE OHIO AND FEDERAL CONSTITUTIONS.
 Appellant claims that the trial court improperly allowed Harris to testify that appellant wanted to drive to Hilliard, Ohio to buy drugs, when the state did not disclose, prior to trial, that Harris would provide this testimony. Appellant alleges that the state's nondisclosure "devastated" his defense by preventing him from filing a motion in limine to exclude evidence of other criminal acts, i.e., the illegal purchase or sale of drugs. The state counters that it provided appellant with a transcript of the recorded statement given by Harris (which does not include the statement at issue), that it had no knowledge that Harris would make this particular statement, and that appellant suffered no prejudice as the record is replete with evidence indicating that appellant, Harris and Chappel were involved in a drug sale of some nature.
Crim.R. 16 is mandatory in nature. State v. Tomblin (1981),3 Ohio App.3d 17, 18-19. It provides that the state must disclose to the defense, the substance of a co-defendant's statement:
 (B) Disclosure of evidence by the prosecuting attorney.
(1) Information subject to disclosure.
 (a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 (i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;
 (ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;
 (iii) Recorded testimony of the defendant or co-defendant before a grand jury.
 The rule imposes certain obligations on the state with respect to discovery, and the state must comply with its letter and spirit or else affirmatively demonstrate its inability to do so. State v. Robinson (Dec. 23, 1981), Hamilton App. No. C-810117, unreported, 1981 WL 10175, at *1.
When the state has failed to disclose a co-defendant's statement, the trial court has discretion to correct the nondisclosure by imposing sanctions. See State v. Parson (1983), 6 Ohio St.3d 442, 445; Crim.R. 16(E). In order to find that the trial court abused its discretion by admitting evidence that the prosecution failed to disclose as required by Crim.R. 16, a reviewing court would have to determine (1) that the prosecution's failure to disclose was a willful violation of the rule, and (2) that foreknowledge of the statement would have benefited the accused in preparation of his defense, or (3) that the accused was prejudiced by the admission of the statement. Daws, 104 Ohio App.3d at 474; see, also, Parson, 6 Ohio St.3d at 445.
Turning to the first prong, we do not find that the state's failure to disclose was a willful violation of the rule. The line of questioning followed by the prosecutor does not indicate that the state knew that Harris would testify that he and appellant drove to Hilliard to buy drugs. This information came out as Harris was testifying, in a narrative manner, in response to the question: "Any idea why he came over to your house?" As well, upon defense counsel's objection, the prosecutor stated:
 [M]y recollection was I met with Mr. Harris and his brother Andy Harris who was being called as a potential rebuttal witness as to a notice of alibi. My recollection was that Andy Harris was the one that brought that issue up and David was in the room. I don't believe he was specifically asked that question.
 Although Andy Harris's statement was not provided to appellant, he is not a codefendant, and disclosure of his statements are not required by Crim.R. 16.
Moreover, we do not find that appellant was prejudiced by the nondisclosure, or that his defense would have benefited from disclosure of the statement. In a recorded statement made to a police officer, and provided to appellant, Harris states that, "Derrick was going to sell him some, sell him some drugs"; and "he [appellant] wanted to sell him some drugs"; and "Derrick had drugs but I don't know exactly what he had." Appellant was well aware that Harris would testify that appellant was involved in an illegal drug transaction. Contrary to appellant's contention, he was provided with evidence before trial, in the form of Harris' transcribed statement, which indicates that he "was in the business of dealing drugs."
The assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN ADMITTING A TAPED STATEMENT AS A PRIOR CONSISTENT STATEMENT AND FURTHER ERRED IN PERMITTING THE JURY TO PLAY THE TAPED STATEMENT DURING ITS DELIBERATIONS. THIS EVIDENCE WAS HEARSAY AND THE APPELLANT WAS DENIED HIS RIGHTS TO A FAIR TRIAL WHEN IT WAS PLAYED A SECOND TIME BY THE PROSECUTOR IN THE JURY DELIBERATION ROOM.
 At trial, Chappel identified appellant, and testified that he was the individual who demanded his money at gunpoint. On direct examination, Chappel testified that he told police that he recognized his assailant as "Derrick." On cross-examination, appellant challenged the victim on this point, asking "[i]sn't it true that you were given Derrick's name by the police?" Chappel replied that he was not, and defense counsel pressed him on the issue, asking "never at any time were you told?" Chappel insisted that it was he who provided the police with appellant's name. Following cross-examination, Officer Albright testified. He authenticated an audiocassette recording of his conversation with Chappel which took place after the robbery. The state attempted to play the tape, but defense counsel objected. The trial court ruled that the contents of the recording were admissible under Evid.R. 801 in order to demonstrate a prior consistent statement.
Pursuant to Evid.R. 801(D)(1)(b), an out of court statement is not hearsay if
 [t]he declarant testifies at the trial or hearing, and is subject to cross examination concerning the statement, and the statement is
* * *
 (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.
 This rule permits the rehabilitation of a witness whose credibility has been attacked by an express or implied charge that he recently fabricated his story or falsified his testimony in response to improper motivation or undue influence. State v. Lopez
(1993), 90 Ohio App.3d 566, 578, citing Motorists Mut. Ins Co. v. Vance (1985), 21 Ohio App.3d 205, 207.
Not all prior consistent statements are permitted to rehabilitate the credibility of a witness under Evid.R. 801(D)(1)(b). The rule includes only those prior consistent statements made before the existence of any motive or influence to falsify testimony. Id. In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view "of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation." Id.
On cross-examination, defense counsel's questioning implied that Chappel had lied when he testified that the police had not provided him with appellant's name. The questions posed by defense counsel failed to present a time frame in which the alleged undue influence by the police occurred. Thus, the prosecution was subsequently permitted to play the audio recording of Chappel's prior consistent statement to rebut the contention that the police provided Chappel with appellant's name. Under these circumstances, Evid.R. 801(D)(1)(b) allows the use of prior consistent statements for the purpose of rehabilitating the witness's testimony. See, e.g., State v. Stringfield (1992), 82 Ohio App.3d 705,713; Motorists Mut. Ins. Co. v. Vance (1985), 21 Ohio App.3d 205, 207;State v. Bock (1984), 16 Ohio App.3d 146, 148.
Appellant also alleges that the jury should not have been permitted to listen to the recording again once deliberations had begun. However, as a nonhearsay statement under Evid.R. 801(D)(1)(b), the recorded statement was properly admissible and the trial court did not err by allowing the jury access to this piece of evidence. The third assignment of error is overruled.
Assignment of Error No. 4:
 APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE PROSECUTOR ENGAGED IN MISCONDUCT IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SECTIONS 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
 Appellant lastly contends that he was deprived of a fair trial because of prosecutorial misconduct. Specifically, appellant argues that the prosecutor improperly questioned a witness about evidence that had been suppressed.
The trial court granted appellant's motion to suppress evidence which was obtained as a result of a warrantless search. The evidence included a gun which was retrieved from the apartment appellant shared with his girlfriend, Lauren Heller. At trial, appellant called Heller to testify as an alibi witness. Upon cross-examination, the prosecutor asked: "your boyfriend ever own a gun?" Heller answered, "I was not aware there was a gun in the house." The prosecutor followed up with: "My question is did he ever own a handgun?" An objection by defense counsel was overruled and Heller answered the question in the negative. Appellant contends that these questions were prejudicial and improper.
The test for prosecutorial misconduct asks whether the remarks made by the prosecutor were improper and, if so, whether the remarks prejudicially affected substantial rights of the accused. State v. Smith
(1984), 14 Ohio St.3d 13, 14. In making this determination, an appellate court should consider (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. State v. Braxton (1995), 102 Ohio App.3d 28, 41.
A prosecutor has a duty to refrain from discussing matters not supported by admissible evidence. State v. Lott (1990)51 Ohio St.3d 160, 166. However, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Hill
(1996), 75 Ohio St.3d 195, 204. In the present case, the questions posed by the prosecutor related to a specific element of the crime with which appellant had been charged. The question was asked in a general manner, and did not inquire whether Heller knew of the particular gun that was found and subsequently suppressed. Further, while testifying at trial, appellant himself admitted to owning a handgun at the time of the incident.
After reviewing the entire record, we cannot say the outcome would have changed if the prosecutor had not asked any such questions. Therefore, we conclude that the questions did not prejudicially deprive appellant of a fair trial. Appellant's fourth assignment of error is overruled.
YOUNG, P.J., and VALEN, J., concur.