OPINION
Defendant-appellant, Fred McShan, appeals his conviction in the Jefferson County Court of Common Pleas on charges of attempted murder, felonious assault, assault, and criminal trespass.
On April 9, 1996, appellant, then age sixteen years old, was involved in the shooting of another juvenile, Donald Harris. According to the testimony adduced at trial, the shooting occurred in the Kroger's parking lot in Steubenville, Ohio. Earlier in the day, appellant had been on the grounds of Steubenville's Big Red High School where he had struck Ivey Hampton. Appellant was not a registered student at the school and had no permission to be on the premises at the time. According to appellant, he struck Hampton in the belief that Hampton was going to strike him.
Later in the afternoon, appellant, along with his brother David. McShan, and two other friends, T. J. Smith, and Darren Holt, were walking towards the Kroger's store in Steubenville. At the same time, another larger group appeared at the Kroger's store, which group included Donald Harris, Jason Bigsby, and Oobie Dixon, a cousin of Hampton. As the two groups approached each other, Dixon confronted appellant concerning the incident with Hampton.
According to the testimony elicited during the case-in-chief of plaintiff-appellee, the State of Ohio, a heated verbal argument ensued with Dixon inviting appellant to a fist fight. At some point during the argument, appellant pulled out a handgun, waved it around for a few moments, then fired a shot at Harris, striking him in the chest.
This part of the incident was controverted by appellant's witnesses. According to appellant, his group became fearful and began to back away from the larger group. As they did so, Harris pulled out a handgun and was going to shoot Holt, at which point appellant shot Harris.
Sometime later that evening, appellant, along with his brother, Smith, and Holt, were located by police in the basement of a residence on Fifth Street in Steubenville. The four individuals were taken into custody and transported to the Steubenville Police Department. Appellant was questioned concerning the shooting by Detective John Lelless. Present in the room with Lelless at the time were Officer Piergallini, appellant, and appellant's mother Earlene McShan. Appellant and his mother both signed a waiver of rights form indicating that appellant had been informed of his Miranda rights and that appellant nonetheless wished to make a statement. Appellant then gave an audiotaped statement in which he confessed to shooting Harris.
Appellant initially appeared before the Jefferson County Juvenile Court. Pursuant to R.C. 2151.26, the juvenile judge ordered appellant to be tried as an adult. Specifically, the juvenile judge found that the offense charged, attempted murder, was a category one offense and that appellant was sixteen or older at the time of the offense.
On May 16, 1996, a Jefferson County Grand Jury returned a four-count indictment against appellant, charging him with attempted murder in violation of R.C. 2903.02 and 2923.02, felonious assault, in violation of R.C. 2903.11 (A) (2), assault, in violation of R.C. 2903.13, and criminal trespass, in violation of R.C. 2911.21 (A) (2). In addition, the attempted murder and felonious assault counts carried with them firearm specifications. Appellant sought to suppress his audiotaped statements by way of a motion filed on June 26, 1996. Following an evidentiary hearing, the trial court denied appellant's motion.
A jury trial commenced on July 3, 1996. On July 9, 1996, the jury found appellant guilty on all counts contained in the indictment. Following the preparation of a presentence investigation report, appellant was sentenced on July 30, 1996. Pursuant to R.C. 2941.25, the trial court found that the counts for felonious assault and attempted murder were allied offenses of similar import, and therefore ordered the felonious assault conviction set aside. For the count of attempted murder, appellant received a sentence of five to twenty-five years, with a period of three years actual incarceration for the attendant firearm specification. For the count of assault, a misdemeanor, appellant received a sentence of sixty days, and for the count of criminal trespass, also a misdemeanor, appellant received a sentence of thirty days. The trial court ordered the sentences to run consecutively. Subsequently, on August 30, 1996, the trial court filed a corrected sentencing entry ordering that the misdemeanor sentences would run concurrently with each other and with the sentence for attempted murder. Appellant subsequently filed a timely notice of appeal.
Appellant brings four assignments of error, the first of which states:
 "The trial court erred to the prejudice of Appellant by overruling his motion to suppress and admitting his taped confession into evidence."
Appellant argues that his confession, admitted as evidence during the trial, was not voluntarily given. Specifically, appellant notes that he was scared and was crying during the interview, and that neither appellant nor his mother were told prior to the interview that appellant was being questioned concerning the crime of attempted murder. Appellant also claims that he was not told that Holt and Smith had been released to their parents, and that at the time of the interview appellant was concerned for his brother. According to appellant, both prior to being informed of his Miranda rights and afterwards, the interrogating officer made statements to the effect that if appellant cooperated, then the officer would help appellant's brother. As such, appellant claims his confession was not voluntary, but was induced by the officer's promise to help his brother.
Appellee concedes that appellant was crying throughout the inter view, but notes that this alone does not establish that appellant's confession was involuntary. Appellee notes that police interrogations, by their very nature, are unsettling experiences, and that in the instant case, there were no threats of physical violence and no promises were made to appellant that he would receive leniency. As for the comments relating to appellant's brother, appellee claims that Lelless merely informed appellant that his brother was being held in connection with the shooting, and that he would be released depending on the substance of appellant's statements. Appellee reiterates that there was no evidence to establish that the police officers engaged in blatant coercive conduct.
In reviewing a motion to suppress, an appellate court is to determine whether the court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 283. In doing so, an appellate court must bear in mind that the weight of the evidence and the credibility of witnesses are for the trier of fact. State v. DePew (1988),38 Ohio St.3d 275, 277. Accepting the findings of fact of the trial court as true, an appellate court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case. State v. Harris (1994),98 Ohio App.3d 543, 546.
In deciding whether appellant's confession was involuntarily induced, we consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Getsy (1998),84 Ohio St.3d 180, 188. A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. State v.Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus (citing Colorado v. Spring [1987], 479 U.S. 564). Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which Miranda was based. Dailey, supra, at 91-92.
The record on appeal fails to demonstrate that Detective Lelless engaged in any improper coercive behavior. Appellant was verbally advised of his constitutional rights and signed a written waiver of said rights. Appellant's mother was present throughout the interview and her signature also appears on the waiver form. There is no evidence of physical deprivation, mistreatment or threats of physical harm. Nor did Lelless promise any leniency to appellant in exchange for his cooperation.
The fact that Lelless did not inform appellant that he was being charged with attempted murder does not of itself make appellant's confession involuntary. A suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege. State v. Campbell (1994), 69 Ohio St.3d 38, 46. Rejecting a similar argument, the United States Supreme Court has stated that" [t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." Spring, supra, at 574. Appellant was certainly aware that he was being questioned concerning the shooting of Harris. Being informed as to the specific charge of which he was suspected would only have affected the wisdom of a Miranda waiver, not its essentially voluntary and knowing nature. Id., at 577. In addition, admonitions to tell the truth are considered to be neither threats nor promises and are permissible. State v. Loza (1994),71 Ohio St.3d 61, 67. Promises that a defendant's cooperation will be considered in the disposition of the case, or that a confession will be helpful, do not invalidate an otherwise legal confession. Id. "When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. State v. Arrington (1984), 14 Ohio App.3d 111,115 (citing People v. Flores [1983], 144 Cal.App.3d 459).
The trial court apparently disbelieved the testimony of appellant's mother that Lelless had promised appellant that if he made a statement his brother would be released. Appellant's audio taped confession fully supports the finding. During the interview Lelless made it very clear to both appellant and his mother that he had no authority to order the release of appellant's brother. In any event, the release of appellant's brother would appear to be a natural consequence of appellant's confession to the shooting of Harris.
Appellant was sixteen years old at the time of the interview, could read and write, and had served a period of probation for driving without a license. The record contains no evidence of any physical deprivation or mistreatment, or of any threats or improper inducement on the part of Lelless. In the absence of coercive police conduct, the trial court did not err in overruling appellant's motion to suppress.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "The trial court erred to the prejudice of Appellant by admitting into evidence the weapon which was discovered as the result of an unlawfully obtained confession."
Appellant argues that the location of the weapon used in the shooting was discovered as a result of an illegally obtained confession and should therefore have been suppressed. However, in appellant's first assignment of error, we found that appellant's confession was not illegally obtained. Accordingly, appellant's second assignment of error is similarly without merit.
Appellant's third assignment of error states:
 "The trial court committed plain error by instructing the Jury on the defense of self-defense as opposed to the defense of defense of another.
This assignment of error relates to the failure to give certain jury instructions. Crim.R. 30 provides:
 "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider the verdict, stating specifically the matter objected to and the grounds of the objection."
Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim.R. 30, is a waiver of the issue on appeal. State v. Underwood (1983), 3 Ohio St.3d 12, 13. To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice. State v. Bock (1984),16 Ohio App.3d 146, 150. Furthermore, notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent the manifest miscarriage of justice.State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
At trial, the jury was instructed on the affirmative defense of self-defense, but was not given instructions on defense of another. Appellant claims this was error since there was testimony at trial suggesting that appellant shot Harris because Harris was about to shoot Holt, whereas there was no testimony concerning self-defense. Appellant concedes that his counsel did not object to the instructions and so argues that the error rises to the level of plain error.
In response, appellee notes that appellant argued self-defense to the jury and that the trial court had no duty to instruct the jury on a different defense than the one argued throughout trial. In any event, appellee argues that the result would not have been any different had the instruction for defense of another been given.
Our review of the record fails to demonstrate that the trial court committed error, let alone plain error, in instructing the jury on self-defense. Throughout the trial, counsel for appellant made reference to the affirmative defense of self-defense, and argued that appellant had been protecting himself. As part of this strategy, counsel for appellant went to great lengths to try to introduce testimony that Harris carried a gun, and that this fact was known to appellant. Counsel for appellant also called a number of witnesses that testified how appellant and his family had been harassed by Harris and others, and that appellant had been shot at before by Harris. Notwithstanding the testimony of appellant's witnesses that Harris pulled a gun on Holt rather than on appellant, counsel for appellant continued to argue self-defense, making the following statement during closing arguments:
 "And if you find it was in "self-defense, you know, you'll go in, have a drink of water, say not guilty and we're all going home."
Counsel for appellant did not argue defense of another nor did he request instructions on it. The trial court instructed the jury in a manner consistent with the defense strategy relied upon by counsel for appellant. We find no error on the part of the trial court in so doing.
Appellant's third assignment of error is without merit.
Appellant's fourth assignment of error states:
 "Appellant was denied his Sixth Amendment Right to the effective assistance of counsel."
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. State v. Sallie (1998),81 Ohio St.3d 673, 674. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the trial would have been different. See id.
This standard reiterates the two prong test announced inStrickland v. Washington (1984), 466 U.S. 668, at 687, wherein the United States Supreme Court stated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
"Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." State v.Carter (1995), 72 Ohio St.3d 545, 558. Rather, trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable professional assistance. Sallie,supra, at 675.
Appellant points to several alleged errors on the part of his counsel, specifically the failure of counsel to excuse any jurors during voir dire, the failure of counsel to move for a directed verdict at the close of appellee's case in chief, the failure to aggressively cross-examine juvenile witnesses called to testify on behalf of appellee, and the fact that counsel argued self-defense rather than defense of another. With reference to the cross-examination of appellee's witnesses, appellant points to statements made by counsel during closing argument. Specifically, counsel for appellant stated:
 "You — you didn't see these young witnesses that I cross-examined, I didn't tear into them. I didn't try to make them out a liar. They're kids, you know what I'm saying." In addition, in reference to Harris, counsel stated:
 "Now, Donald Harris, okay, he's — he's a kid. He's a kid, you know, and for me to use my — my talents to browbeat a kid, you know, I mean, it just doesn't work that way. I don't know if this Judge would put up with it."
 Appellant also points to a statement made by counsel at a post-trial motion for judgment of acquittal, in which counsel stated:
 "I made all the error I could and if I got a not guilty verdict, God bless me."
In response, appellee notes that failing to excuse jurors during voir dire falls within the wide range of reasonable professional assistance, and is often done purposefully in an attempt to make jurors more trusting of the attorney. Indeed, appellee notes that in closing argument, counsel for appellant stated:
 "You're a blue ribbon jury. This is the best jury I've ever seen this side of anywhere. I got a mixture of everything here. I got mothers. I've got fathers. I got people that don't have children. I got a college student. I got a person who knows about grievances. He knows about people. I could just go on, you know, people that work in the court system."
With reference to counsel's statements at the post-trial motion appellee argues that this statement was simply a post verdict attempt to build an ineffective assistance of counsel argument on appeal and as such should be disregarded.
Although counsel for appellant made some questionable decisions that ultimately proved unsuccessful, we fail to see how counsel's performance fell below an objective standard of reasonableness. The failure to excuse jurors, the manner of cross-examination of appellee's witnesses, and the decision to argue self-defense rather than defense of another were all decisions that fell within the wide range of reasonable professional assistance. Similarly, the failure of counsel to move for acquittal at the close of appellee's case-in-chief did not amount to ineffective assistance of counsel given that the evidence introduced by appellee was more than sufficient to sustain appellant's convictions.
In addition, counsel's statement at the post-verdict hearing fails to point to any specific errors allegedly made. In fact, when read in context, it is not even clear that the particular statement was made in reference to the instant case. Appellant has failed to show that he was prejudiced by counsel's conduct or that counsel's conduct fell below an objective standard of reasonableness. As such, appellant was not denied the effective assistance of counsel.
Appellant's fourth assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ___________________________________ Gene Donofrio, Judge