OPINION.
{¶ 1} Defendant, Kevin Young, appeals from his conviction and sentence for rape.
 {¶ 2} Evidence presented at trial by the State demonstrates that on January 5, 2002, at around 8:00 p.m., fifteen year old A.L. went with her friend, Sheronda Morgan, to the home of Ms. Morgan's boyfriend, Greg Nichols. That residence is located at 924 Wilberforce Place, Dayton. While Mr. Nichols, Ms. Morgan and A.L. were seated in the living room talking, Defendant came downstairs. Mr. Nichols introduced Defendant as his father. Defendant asked Ms. Morgan if she was Mr. Nichols' girlfriend, and whether she was treating him right and giving him what he wanted. Defendant then asked A.L. to come into the kitchen and let Ms. Morgan and Mr. Nichols have some time alone. Defendant also told A.L. she could watch television down in the basement.
 {¶ 3} A.L. and Defendant subsequently went down into the basement. Defendant closed the door behind them. Defendant attempted to make conversation with A.L., but she ignored him and kept looking away. Defendant asked A.L. why she wasn't looking at him. He then began kissing A.L.'s face. She pushed him away and told him to get off of her. Defendant responded by grabbing A.L.'s arms and pulling her to where a washer and dryer were located. Defendant pinned A.L. against the washer and dryer by standing in front of her, and he began to kiss her face and put his hands inside her shirt, rubbing her breasts. Defendant then began pulling A.L.'s pants down, and he put his hands inside her pants, inserting a finger into her vagina. A.L. struggled, attempting to push Defendant away, but he held fast.
 {¶ 4} Defendant grabbed A.L. by the arms again and took her back to the couch. Defendant pushed A.L. down onto the couch and began pulling her pants down farther. Defendant once again inserted his finger into A.L.'s vagina. He then held A.L.'s legs upward and attempted to penetrate her vagina with his penis. A.L. prevented that by covering her vagina with her hands. While struggling with Defendant, A.L. was able to kick him in the head or shoulder, which allowed her time to jump off the couch, pull her pants up and run back upstairs. Defendant tried to grab A.L.'s foot as she ran up the stairs, but she was able to break away.
 {¶ 5} A.L. walked into the living room, sat down beside Ms. Morgan, and told her that they "needed to leave." Moments later, Defendant came upstairs. Defendant called Mr. Nichols to the kitchen, where they spoke briefly, then Defendant left. A few minutes later, Ms. Morgan and A.L. left. They first walked back to A.L.'s cousin's house, and then went to A.L.'s home. During this time, A.L. told Ms. Morgan what had happened to her. Several hours later A.L. told her mother she had been sexually assaulted by Defendant.
 {¶ 6} A.L.'s mother immediately took A.L. to Good Samaritan Hospital. Nurse Rhonda Hanos interviewed A.L. and collected evidence for a sexual assault kit. Nurse Hanos swabbed A.L.'s cheeks and lower abdomen after A.L. indicated Defendant had kissed those areas. Laboratory testing of those swabbings revealed a mixture of DNA from A.L. and another person. Defendant could not be eliminated as the other person who contributed to the DNA product. A few days after this assault, A.L. identified Defendant from a photospread as the man who raped her.
 {¶ 7} Defendant was indicted on one count of forcible rape. R.C.2907.02(A)(2). Following a jury trial Defendant was found guilty. The trial court sentenced Defendant to a mandatory five year prison term.
 {¶ 8} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "Defendant-Appellant's Conviction Is Against The Manifest Weight Of The Evidence."
 {¶ 10} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 11} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 12} Defendant was convicted of rape in violation of R.C.2907.02(A)(2), which provides:
 {¶ 13} "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 14} "Sexual conduct" includes the insertion, however slight, of any part of the body or any instrument, apparatus or other object into the vaginal cavity of another. R.C. 2907.01(A). "Force" means any violence, compulsion or constraint physically exerted by any means upon or against a person. R.C. 2901.01(A)(1).
 {¶ 15} A.L. testified to the facts set out above, including the fact that Defendant had penetrated her vagina with his finger. A.L.'s testimony, if believed, is clearly sufficient to convince the average mind of Defendant's guilt of the offense of Rape, beyond a reasonable doubt. Thus, Defendant's conviction is supported by legally sufficient evidence. State v. Jenks (1991), 61 Ohio St.3d 259. Defendant argues, however, that his conviction is against the manifest weight of the evidence because the jury lost its way in choosing to believe A.L.'s version of the events rather than Defendant's version. According to Defendant, the testimony of the State's witnesses, particularly A.L., was not credible. Defendant argues that there are inconsistencies in the various accounts A.L. gave of what happened, and that her trial testimony is inconsistent with that of other witnesses.
 {¶ 16} There is nothing inherently incredible or implausible in A.L.'s version of the events. Her testimony at trial is consistent with the statements she made to the police and nurse Hanos regarding the essential elements of this offense. Moreover, A.L.'s testimony is corroborated by the discovery of Defendant's DNA on A.L.'s cheek and lower abdomen, places where A.L. claims Defendant kissed her. The forensic evidence shows that the probability that some African-American other than Defendant contributed to the DNA found on A.L.'s cheek is only one in 37,110,000. For the DNA found on A.L.'s lower abdomen, the probability of an African-American contributor other than Defendant is only one in 312,600.
 {¶ 17} Defendant testified at trial and denied having any sexual contact with A.L. at all. He testified that the only physical contact he had with her is when she touched his hair while braiding it when they were in the basement. A.L. denied that she braided or touched Defendant's hair. Defendant speculates that his DNA may have gotten on A.L. because he was sweating, and that after A.L. had touched his sweaty hair she touched her own cheek or abdomen. However, the forensic evidence does not support Defendant's theory because the DNA was extracted from saliva which was present on A.L.'s cheek and abdomen, and could only have come from contact with Defendant when he kissed A.L. in those areas, as she claimed.
 {¶ 18} In resolving conflicts in the evidence the trier of facts must determine the credibility of the witnesses and the weight to be given to their testimony. In that regard this court stated in State v.Lawson (August 22, 1997), Montgomery App. No. 16288:
 {¶ 19} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 20} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 21} We cannot find that the jury lost its way simply because it chose to believe A.L. instead of Defendant. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 22} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 23} "The Trial Court Erred To Defendant-Appellant's Prejudice When It Permitted The State To Bolster The Testimony Of The Victim On Direct Examination."
 {¶ 24} On redirect examination, over Defendant's objection, the trial court permitted A.L. to read to the jury the written statement she gave to police after this attack had occurred. That statement was consistent with A.L.'s testimony at trial. Defendant argues that the trial court erred in admitting this evidence because it was inadmissible hearsay that prejudiced Defendant by improperly bolstering the credibility of the victim, A.L.
 {¶ 25} A trial court has broad discretion in admitting or excluding evidence, and its decision in such matters will not be disturbed on appeal absent an abuse of its discretion. State v. Sage
(1987), 31 Ohio St.3d 173. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court.State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 26} Evid.R. 801 provides in relevant part:
 {¶ 27} "(D) Statements which are not hearsay. A statement is not hearsay if:
 {¶ 28} "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."
 {¶ 29} Pursuant to Evid.R. 801(D)(1)(b), a prior consistent statement of a witness at trial is admissible on redirect examination to rehabilitate that witness if the statement is offered to rebut an express or implied charge on cross-examination that the witness was fabricating testimony given on direct examination. State v. Bock (1984),16 Ohio App.3d 146; State v. Polhamus (June 18, 1999), Montgomery App. No. 17283.
 {¶ 30} During cross-examination of A.L., defense counsel repeatedly pointed out that A.L.'s trial testimony differed from the statements she had previously given shortly after the attack occurred, and that during her trial testimony A.L. added details that do not appear in her previous statements. At one point, when A.L. acknowledged that she had left some things out of her previous statements, defense counsel remarked: "Which you conveniently remembered today, correct?" Obviously, defense counsel was implying recent fabrication with respect to the testimony given by A.L. on direct examination.
 {¶ 31} Under those circumstances, the State was entitled on re-direct examination to rehabilitate A.L. with evidence of the previous statements she made before trial which were consistent with her trial testimony. Polhamus, supra; Bock, supra; Evid.R. 801(D)(1)(b). The trial court did not abuse its discretion in admitting the evidence.
 {¶ 32} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 33} "The Trial Court Erred To Defendant-appellant's Prejudice When It Permitted A Nurse To Testify As To The Victim's Statement Regarding Her Attacker Under The Business Record Exception To The Hearsay Rule."
 {¶ 34} Defendant argues that the trial court erred in admitting statements by A.L. to the emergency room nurse who treated her, identifying Defendant as the perpetrator of this sexual assault, because they constitute prejudicial hearsay. Defendant asserts that this evidence is not pertinent to medical diagnosis or treatment, and thus is not admissible pursuant to that hearsay exception, Evid.R. 803(4), or the business records hearsay exception, Evid.R. 803(6). See: State v. Clary
(1991), 73 Ohio App.3d 42. According to Defendant, this inadmissible hearsay prejudiced him because it improperly bolstered the credibility of the victim, A.L.
 {¶ 35} Rhonda Hanos, an emergency room nurse at Good Samaritan hospital, treated A.L. and collected evidence from her for the sexual assault evidence kit when A.L. was brought into the hospital complaining that she had been sexually assaulted. As part of the routine protocol in treating patients in these types of cases, Nurse Hanos interviewed A.L. and obtained a patient history from her, which includes a history of the assault/abuse. On direct examination of Nurse Hanos, the prosecutor asked what information had been entered on the sexual assault/abuse form in the section entitled: "Assault/abuse was by:". Defendant objected but the trial court overruled that objection, holding that the evidence was admissible pursuant to the business records exception to the hearsay rule, Evid.R. 803(6). Nurse Hanos then testified that A.L. had identified "Kevin" as the person who assaulted her.
 {¶ 36} Evid.R. 803 provides in relevant part:
 {¶ 37} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 {¶ 38} "* * *
 {¶ 39} "(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
 {¶ 40} "(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
 {¶ 41} The State argues that the testimony of Nurse Hanos was sufficient to meet the authentication and foundational requirements of Evid.R. 803(6), the business records exception, and thus the trial court properly admitted this evidence under the business records exception. However, it is not A.L.'s statements to Nurse Hanos indicating that she was sexually assaulted that Defendant challenges, but A.L.'s statement identifying Defendant as the perpetrator. Although properly authenticated medical records may be admissible pursuant to Evid.R. 803(6), statements by a patient recorded in those medical records regarding fault or the cause of an accident are not admissible. See: Mastran v. Urichich
(1988), 37 Ohio St.3d 44, 48-49; Clary, supra. Similarly, statements of fault are generally inadmissible under the medical diagnosis/treatment exception to the hearsay rule, Evid.R. 803(4), because such statements are not relevant to either diagnosis or treatment. State v. Dever64 Ohio St.3d 401, 1992-Ohio-41; Clary, supra.
 {¶ 42} In Dever, however, the Ohio Supreme Court found that statements made by a child victim identifying the perpetrator of sexual abuse are pertinent to both diagnosis and treatment of the child. The statement assists the doctor in treating any injuries the child may have, including the possibility of any sexually transmitted diseases, preventing future abuse of the child, and in assessing the emotional and psychological impact of the abuse on the child. Id., at 413. Thus, Dever
held that:
 {¶ 43} "Statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule. This means that a child's statement identifying his or her abuser should be treated the same as any other statement which is made for the purposes set forth in Evid.R. 803(4)." Id., at 414.
 {¶ 44} Accord: State v. Burrell (1993), 89 Ohio App.3d 737; Statev. Harris (June 7, 2001), Cuyahoga App. No. 78241; In re Hopsin (March 21, 2002), Marion App. No. 9-01-54; State v. Stowers (July 5, 1996), Tuscarawas App. No. 94AP090066.
 {¶ 45} Even if A.L.'s statement to Nurse Hanos identifying Defendant as her assailant was not admissible per Evid.R. 803(6), as the trial court found, the evidence was admissible per Evid.R. 803(4). Therefore, any abuse of discretion on the trial court's part is harmless.
 {¶ 46} Even assuming arguendo that A.L.'s statement to Nurse Hanos identifying Defendant as her abuser was erroneously admitted, that evidence was merely cumulative and not prejudicial to Defendant in view of the other evidence establishing Defendant's identity. Clary, supra;State v. Reger (May 14, 1986), Summit App. No. 12378, 12384; State v.Groves (Sept. 26, 2002), Monroe App. No. 853, 2002-Ohio-5245. The victim, A.L., identified Defendant from a photospread and at trial. Moreover, the mixture of DNA found on A.L.'s body, which created a very high probability that Defendant was a contributor to that mixture, corroborated A.L.'s identification testimony.
 {¶ 47} Thus, because A.L.'s identification statement to Nurse Hanos was cumulative to her identification testimony at trial, any error in admitting A.L.'s statement to Nurse Hanos was harmless error at best.
 {¶ 48} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 49} "Defendant-appellant Was Unfairly Prejudiced And Denied His Constitutional Rights To Due Process And A Fair Trial When The Prosecution Made A Statement In Its Closing Argument That Would Constitute Misconduct."
 {¶ 50} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey, 85 Ohio St.3d 487, 493,1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor.
 {¶ 51} A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott (1990), 51 Ohio St.3d 160,165. In determining whether the prosecutor's remarks were prejudicial, the State's closing argument must be viewed in its entirety. State v.Ballew, 76 Ohio St.3d 244, 255, 1996-Ohio-81.
 {¶ 52} Defendant complains about the following remark during the State's closing argument:
 {¶ 53} "You're gonna have the opportunity to read these medical reports. Because if you remember A.L. indicated that she was assaulted and that the Defendant, known to her as Kevin when gave this statement to the police on or about the 7th of January, did these things to her. And she put it in writing and she indicated that he put his finger in her vagina. She said it here. She also said it to the nurse.
 {¶ 54} "You saw Mrs. Hanos the other day. She works at uh . . . Good Samaritan. She's been there twelve years approximately, maybe a little more, a little less. But she indicated that: `I spent three hours or more,' and you can look at the report because there's actually a chronology on the back of this indicating when she first came in, et cetera. And you'll be able to count it. And you'll go through what the nurse related A.L. said.
 {¶ 55} "She doesn't change her story. She tells the truth. She indicates someone by the name of Kevin, last name unknown, did this to her. In both her statement to the police and her statement to the nurse and her testimony under oath in front of you, reflected that the Defendant in this case, who she pointed out not once but twice, against her will and by force inserted his fingers into her private parts." (T. 767-768).
 {¶ 56} Defendant argues that the prosecutor improperly vouched for his own witness and expressed his personal opinion about her credibility. State v. Smith (1984), 14 Ohio St.3d 13. Defendant claims that this improper remark prejudiced him because it bolstered the victim's credibility in a case where that was the critical issue.
 {¶ 57} Defendant failed to object to the prosecutor's remark, thereby waiving all but "plain error." State v. Ballew, supra. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. State v.Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 58} Throughout this trial the defense strategy was to attack the credibility of the victim, A.L. The defense repeatedly pointed out inconsistencies in the statements A.L. made to various people regarding this assault, and inconsistencies between those statements and A.L.'s trial testimony, in an effort to demonstrate that A.L. had changed her story. Viewed in the proper context of the entire closing argument, the prosecutor's remark did not improperly vouch for A.L.'s credibility. Rather, it was a correct summary of what the evidence presented had shown: that A.L.'s story did not change, and that her version of the events remained consistent in the statements she made to the nurse, to police, and to the jury at trial. The prosecutor merely argued that the jury should infer from these consistencies that A.L. is a credible witness.
 {¶ 59} A.L. testified that her version of what happened was the same in the statements she made to police, and to the nurse, and during her testimony at trial. She also testified that her statements and trial testimony were true. Thus, the prosecutor's remark that A.L. didn't change her story and told the truth was a fair comment upon the evidence presented and the reasonable inferences that could be drawn therefrom. The remark was not improper. No error, much less plain error, has been demonstrated.
 {¶ 60} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and WOLFF, J., concur.